[No. 8743. Department Two. June 4, 1910.]

W. L. THOMPSON, *Appellant*, v. JOSEPH SCHONER *et al.*,
*Respondents*.[1]

TAXATION—PROCESS—SUMMONS—SUFFICIENCY. A tax foreclosure
judgment is void where it was entered upon the service of a summons
by publication which required the defendants to appear within sixty
days after the service of the summons, instead of sixty days after
the first publication.

DEEDS—EXECUTION—EVIDENCE TO CONTRADICT—SUFFICIENCY. Evi-
dence contradicting a certified copy of the record of a deed, and
showing that the grantors did not in fact execute and acknowledge
the same, must be "clear, cogent and convincing;" and is insuffi-
cient where it merely appears that one of the grantors, on an im-
proper cross-examination, could not say whether she executed the
deed, and she did not deny that she had acknowledged it, having
left everything to her attorney, and the attorney testified that the
deed had been executed and delivered for the purpose of conveying
the title.

Appeal from a judgment of the superior court for King
county, Main, J., entered November 4, 1909, upon granting
a nonsuit, dismissing an action to vacate a tax foreclosure
judgment, and to quiet title, after a hearing before the court.
Reversed.

*G. A. Hill* and *Fouts & Gould*, for appellant.

*Todd, Wilson & Thorgrimson*, for respondents.

DUNBAR, J.—One Ella H. Ruegg, a spinster, acquired title
to the property in controversy by deed dated March 25,
1894. She subsequently married O. E. Kittredge. She paid
no taxes on the property, and in 1900 one James McGrew
brought action to foreclose a delinquent tax certificate on
said property for the taxes for the years 1894, 1895, and
1896, having paid the taxes for the years 1897, 1898, 1899,
and 1900. Service in said foreclosure action was made by

[1]Reported in 109 Pac. 116.

publication, and judgment and decree were entered and filed therein on January 21, 1901. The property was sold under said decree, and on February 2, 1901, a tax deed was executed to James McGrew. Subsequently, in the years 1902 and 1903, said McGrew and wife sold said land to Joseph Schoner and wife, the defendants in the present action. On February 1, 1908, this action was brought by the appellant, W. L. Thompson, to set aside the judgment rendered in said tax foreclosure proceedings, and to have the said tax deed to James McGrew and the deed from said McGrew and wife declared null and void. The plaintiff in the action, the appellant here, deraigned his title from a patent from the United States, culminating in a quitclaim deed from O. E. Kittredge and Ella H. Kittredge, his wife, the latter being the same person as Ella H. Ruegg.

In the suit by McGrew the summons was by publication, the defendants therein being required to appear and defend the suit, in the language of the summons, "within sixty days after the service of this notice and summons upon you, exclusive of the day of service." It is conceded that this is the only service there was. This summons by publication did not confer jurisdiction, under the rule announced by this court in *Woodham v. Anderson*, 32 Wash. 500, 73 Pac. 536; *Smith v. White*, 32 Wash. 414, 73 Pac. 480; *Thompson v. Robbins*, 32 Wash. 149, 72 Pac. 1043; *Dolan v. Jones*, 37 Wash. 176, 79 Pac. 640, and *Young v. Droz*, 38 Wash. 648, 80 Pac. 810. While issues were made on this question in the pleadings, it is not contended here that the summons in that case was sufficient to confer jurisdiction.

The respondents rely upon the claim that the appellant did not prove the title in himself, for the reason, as they allege, that there was no proof of the execution of a deed from O. E. Kittredge and Ella H. Kittredge to the appellant, W. L. Thompson. At the close of plaintiff's evidence, the defendants moved for a nonsuit. The court reserved his ruling upon the motion and ordered the trial to proceed. At the

close of the evidence introduced upon behalf of the plaintiff and defendants, defendants renewed their motion for a nonsuit, which motion was granted by the court. Plaintiff excepted to the order of nonsuit and the dismissal of said action. Judgment of dismissal was entered, and appeal followed.

We are forced to the conclusion, from a reading of the testimony, that the court erred in dismissing the appellant's case. This court, in *Western Loan & Sav. Co. v. Waisman*, 32 Wash. 644, 73 Pac. 703, where an attempt was made to challenge the execution of a mortgage, said:

"In the absence of fraud or duress, public policy and the security of land titles require that as important a thing as a certificate of acknowledgment shall not be impeached without that degree of proof which is so clear and convincing that it has not the appearance of being prompted by interested or selfish motives. The rules applicable to the acknowledgment of a deed are equally forcible when applied to a mortgage. In either case, public morals and public security are best served by the requirement of that degree of proof which is disinterested and unaffected by any private advantage sought, before a certificate of acknowledgment shall be held to be impeached."

And quoted the following from *Pierce v. Feagans*, 39 Fed. 587:

"In a case of this character it is not enough that there is a preponderance of evidence in favor of the defendants if it should be conceded that there is such a preponderance in the present case. In the language of the state courts, which furnishes the rule of decision, the burden is on the defendants, and the proof furnished to overcome the certificate must be 'clear, cogent, and convincing.' It is a record that is assailed,—a record of an official act performed more than six years ago, and made contemporaneously with the acts attested. The record is in due form of law, and it is aided by the presumption that always attends the acts of public officers, that the duty devolved on the officer was properly performed in the manner stated."

It is a record the validity of which is questioned in this case. It is a certified copy of a deed of record which was pro-

duced as evidence of the transfer of this land, and it makes no difference in what form of action this question arises, whether the action is brought directly to set aside the deed, or whether it arises collaterally in some other case; the public policy and the result of the determination in either case will be the same.

But we do not think that the testimony was equally balanced in this case, or that there is any question of a preponderance of testimony on the part of the respondent, or any testimony at all which could under any circumstances have the effect of disproving the validity of a deed. The respondent relies largely upon the deposition of Ella H. Kittredge, nee Ruegg, which is the only testimony that it is claimed tends to show the invalidity of the deed or to show that no such deed was ever executed. Mrs. Kittredge had been examined in chief only as to matters pertaining to service of summons upon her. On cross-examination she was asked when she acquired title to this property, and stated that it was through her attorneys and she did not know when; could not state whether it was in 1890, 1895 or 1900; that she left all her business transactions to her attorney; did not know whether she had paid the taxes on the property for any number of years suggested, or at all, or whether any one else had paid the taxes for her, or whether she had ever furnished any money for her attorney or any one else to pay the taxes. She was asked: "When did you and your husband make a quitclaim deed of this property to W. L. Thompson?" and her reply was, over the objection of the appellant that this was not proper cross-examination: "I cannot say that we have made a deed." When asked if she was ever paid any money for a quitclaim deed, she responded that all money was paid through her attorney. She stated that Mr. Hill, her attorney, had given her money, but whether for that particular purpose she could not say. When asked whether she knew, at the time that she executed a quitclaim to the property to W. L. Thompson, that parties were living on the

property and had made valuable improvements, her answer was: "If I ever did, I did not know that there were any parties on it." She was asked: "If this present suit should result favorably to the plaintiff, you expect to receive something for your share or interest in the property, do you not?" to which objection was interposed as before, and her answer was, as it appeared in the deposition introduced in evidence: "If it is my property, I would suppose I would." It is the contention of the respondents that the answer was: "It is my property. I would suppose I would." But it appears that, when the witness read over her testimony, she expressed a desire to correct it by saying her answer was: "If it is my property, I would suppose I would." To this, strenuous objections were made by counsel for appellant, to the effect that he had received a copy of the deposition furnished by the stenographer, and that the answer was: "It is my property." As bearing upon the fact that the witness probably did correct her deposition, the attorney for the appellant, when the following question was asked: "As I understand your answer, it being your property you do expect to receive some benefits as the result of this litigation, provided the tax sale and tax deed are set aside," said: "I object to this question for the reason that it is a wrong interpretation of the witness' answer." Her final answer was: "If there is anything when the lawyers get through, I might get some." The court would not accept the amendment to the deposition, and held that the deposition could not be amended in that way.

But we think it is immaterial whether the deposition was amended or not. At the best, it was merely the expression of an opinion as to where the title of the property was. The testimony, taken as a whole, shows that the witness was not making any claim to the property, and did not deny in any respect that she had acknowledged the deed, simply claiming that she did not know; that the business had been done through her attorney; that everything was intrusted to him, and she had no knowledge on the subject herself, and no

opinion to express.  Surely such a statement as this, inter-
jected into a case through cross-examination which was un-
questionably illegal, would not warrant the setting aside of
a solemn instrument like a deed.  But, in addition to this,
the attorney whom she mentioned, Mr. G. A. Hill, testified
that he was the attorney for Mrs. Kittredge; that the deed
introduced in evidence was a certified copy of the original
deed; that the transaction was done through him as an
agent for Mr. Thompson; that he was Thompson's sole
agent; that he made the whole deal and transacted the
business, and when asked: "What was the character of the
conveyance?" answered:  "It was a conveyance of the title.
It was not a mortgage.  It was not a trust.  It conveyed the
property to Mr. Thompson whom I represented as his agent."

We think the evidence is entirely insufficient to justify the
conclusion reached by the court, and that the judgment
should be reversed, with instructions to the court to overrule
the motion interposed by the respondents and to determine
the value of the property and of the improvements the
value of which the respondents are entitled to under the bet-
terment act; and to enter judgment in accordance with such
determination.

RUDKIN, C. J., MOUNT, PARKER, and CROW, JJ., concur.